Thank you. Our next case is California Human Development v. United States. Mr. Adler, you may proceed. Good morning, and may it please the Court. This appeal arises in part out of an error of the trial court in reaching a legal conclusion that under a settlement agreement reached between California Human Development Corp. or CHDC and the government, that the government only agreed to negotiate the enumerated cost items in good faith, and quoting from the Court's opinion, did not agree to resolve any outstanding issue in any particular way. Can I ask you, did you raise this, I mean, in your briefs before us, you raised the, raising a distinction between negotiating in good faith and resolving fairly that appears in the contract. Yes. Did you make that point or raise that argument with, before the Court of Federal Claims? Because she doesn't go into a discussion about why she would necessarily reject a resolving fairly requirement. So it didn't seem to me that the issue was necessarily put to her. Well, as a threshold matter, I was not the counsel in the trial court, so I wouldn't have raised it, but I do believe that that issue was raised. There was some debate about what the contract was that was entered into between the parties. The resolution of the court was to determine what, if any, contract was entered into, the government took the And was the argument made, therefore, that under certain of the terms, you would have to, the standard is negotiation in good faith, and with respect to other terms, it's, there's an obligation to resolve the issues fairly? Yes, I think that was included in the complaint. From the start of the complaint to the post-hearing briefs, both parties addressed the issue of whether or not there was an obligation to resolve the issues fairly. What this language meant, and what obligations were imposed. And I think I would also point out, Your Honor, that in the fact that the trial judge, in her opinion, stated that the agreement did not require anything more than to good faith negotiations, and did not, did not agree to resolve any outstanding issues in any particular way, shows that the court did, in fact, address the, not just the negotiations, but what was required to resolve the issues. Yes, I thought you could read that statement in any number of ways. I mean, even if it's resolved fairly, I think one could, might say that the parties didn't agree to resolve it in any particular way, even though they were obligated to resolve it fairly. That's the reason I asked. Yeah, I'd also point out to another quote from the opinion that, where the judge found that the obligation to negotiate in good faith did not require them to reconsider or address any grant overruns, which is exactly what our argument is in this appeal. That the parties agreed, and I'm going to just quote quickly from the agreement that the court found that's not challenged here, that all reasonable and necessary closeout costs will be fairly negotiated and charged to a closeout grant, and all issues related to the transfer of facility, title, licenses, leases, lien claims, and other transfer issues will be, will also be negotiated and resolved fairly. Now that the parties meant something more than good faith negotiations were required was not just evident from the fact that they used this specific language of resolve fairly, but it was also evident from the care taken in distinguishing certain costs in the agreement. And the reason for this was valid because there were a closeout going on, so there were closeout costs, but there were also other costs that the government had already rejected. So therefore, the costs that were subject to the fairly resolved requirement were now being reconsidered in a different light. CHDC was now relinquishing the benefit of the cost outlays, which it would have enjoyed for up to 20 years had it not reached the settlement. And this added obligation was intended to ensure that the government didn't simply stick to the reasons it gave when it was considering these in the grant environment. Because the CHDC was now giving the government the benefits of a transfer of a grant, a transfer of a lease, a transfer of a modular facility, transfer of program files, and everything else that was related to the grant. So we're in a different context now when we're negotiating the settlement and reaching the settlement from when the government prior considered these costs on a prior basis. Mr. Iser, what do you contend is the difference between resolved fairly and negotiating good faith? I think, Your Honor, there is a significant distinction. First of all, the language was used and added by CHDC, so it meant something to them. And what I think what it means is good faith negotiations go to the means to which you reach an end. Fairly resolved goes to the end. Now, I think you can have the best of good faith and not a fairly resolved issue. And I'm sure there are instances where you can have bad faith. And it turns out that even though you had bad faith, you fairly resolved an issue. So I think there is a distinction. And it's particularly- Do you have any basis for this distinction? I have a basis in the definition of a fairly resolved. Fairly means that- Anything in this record that provides any basis to distinguish the two other than the words themselves? I think that the words were added and the agreement that the CHDC returned. The way that this went down is there was a meeting. Certain things were discussed. The government sent a proposal. It was a counterproposal to CHDC. And they added the specific language. So I think you have to, as a court, you have to read. You can't make language and know that there are certain rules of contract construction. Mr. Adler, we have a very thorough 30-page opinion by the Court of Federal Claims judge. Why can't we read that opinion as making sufficient findings to justify a fairly resolved result? Because I think, Your Honor, the Court's statements that that was not considered. All that was required of the government was to negotiate in good faith. But I'm saying I recognize how the Court dealt with the issue you're raising. But I'm asking you, alternatively, aren't there enough findings there for this Court to reach its independent conclusion that there's a fair resolution? Your Honor, I don't believe that would be the promise of this Court. I think that's better for the trial court to decide after having heard a four-day trial. Well, I don't understand. I mean, if the judge were only applying a narrow reading of the bad faith, good faith requirement, the opinion could have ended at page 3. I mean, she said they exchanged proposals. They met numerous times. They talked to each other. End of story. But as the Chief pointed out, there are another 15 or 20 or so pages of fact-finding to which we have to defer. Irrespective of the resolve versus whatever, we would defer to her fact-finding. And her fact-finding seems to go to the heart of all of the issues that you're disputing with respect to resolve fairly, does it not? I think it goes to whether the CHDC meets this significant burden. And I recognize that it's a significant burden to prove bad faith negotiations on the part of the judge. Well, give us your best shot in terms of where you think the district court went astray. You've got numerous issues here. Which is the big issue on the resolve fairly where you think there was insufficient fact-finding to support the conclusion? I think to do that, you have to look at it in two perspectives. One, I think the fact that you have to look at the big picture, and I'm kind of looking at it from 10,000 feet. Truth of the matter is that not a single cost that was for the agency or the government prior to the relinquishment agreement or prior to the closeout, there was not a change in one view of those costs. Government simply reviewed information, received information, reviewed it, and rejected it. There was not a single movement. The trial court talks about the fact that there were negotiations because the government increased the closeout costs. None of those closeout costs related to any of the construction costs or improvement costs that are at issue, and they were included in those that had to be fairly resolved. I don't understand. So we should reverse this on the basis that the government left the position it started out, and that establishes that they didn't resolve the issues fairly because they didn't change their initial position? Well, even good faith negotiations require more than you just steadfastly repeating what you said before. You have to have active participation, and you have to have careful consideration and a real attempt to overcome obstacles. In this case, none of that is present, and there's a tremendous amount of indicia of bad faith and proof that that was the case. So I don't believe that they've satisfied even their obligation to negotiate in good faith, let alone fairly resolve these issues. There are some glaring examples, I think, that I can point out where this is, in fact, the case. Well, give me, quickly, give me the most glaring then of the examples you have. I think the most glaring example is the copier leases. Copier leases are actually included in the regulations of the circular OMB-122, rental of equipment that is relinquished as part of a transfer of a grant and entitled to compensation. The government's position was they didn't prior... No, no, no. As I read the CFC on that issue, which is just a minor issue in terms of the percentage of the money you're asking for, but she made a finding that you have not shown that these copiers were reasonably necessary. Are you suggesting to us that it's glaringly an abuse of discretion for her to have reached that conclusion? Yes, Your Honor. There was no evidence in the record whatsoever to support that, because the government's position was never that those were not reasonably necessary. The government's position was that they didn't have prior approval of those leases. So, again, that's a perfect exemplar of why we believe that the government did not... that there was compelling proof at the trial court level that the government did not only not negotiate in good faith, they didn't fairly resolve these issues. Another glaring example, I think, Your Honor, is with the improvements made to the property. The government's position, although it was a moving target, was at first that the improvements were not part of... we were not entitled to any compensation because the improvements were the property of the landlord. They, of course, a great addition of their bad faith is they spoke out of the other side of their mouth with the landlord, where they said, hey, this is a removable model. We can do what we want with it at the end of this lease term. So those are completely inconsistent positions. Another inconsistency was when they took the position that the regulations, which require compensation to a grant transfer like CHDC for their interest in the property, that those regulations didn't apply when, in fact, previous correspondence, they said they did apply. So, again, we had a moving target on a number of occasions, which evidenced that this was a preordained, set conclusion that they had reached, that they secured the benefits of the settlement, the relinquishment of the grant, the transfer of all of these assets with the expectation and agreement that they would fairly resolve and negotiate in good faith the issues that had already been arisen, and all they did was they stood their ground exactly how they had before. There was no negotiation. There was no consideration. Again, there was review and rejection. Do you wish to save any of your rebuttal time, Mr. Adler? Yes, please. Thank you. And Mr. Bigelow? Yes, Your Honor. May it please the Court, the California Human Development Corporation, or CHDC, was a Head Start grantee that asked for and received an additional grant to install a modular building at a new Head Start site. Unfortunately, CHDC mismanaged the project. They encountered numerous construction problems that caused them to spend additional money above and beyond the grant. They failed to follow the grant regulations, and as a result the government was considering issuing a disallowance that would require the federal funds used on the project to be repaid to the government. Mr. Bigelow, do you agree with the other side, that the issue of a different standard applying to good faith negotiations and resolve fairly was made to the Court of Federal Claims? Because she doesn't explicitly reject a resolve, as I regret it, reject a resolve fairly standard. No, Your Honor. She does not address it, and it was not raised at the Court of Federal Claims. Was it not in the complaint? I mean, the one specific document he raised was the complaint. The complaint is a very brief breach of contract complaint that states that the government agreed to pay these costs and that it didn't pay them, which is not what the agreement says. The agreement says that they will fairly negotiate. And resolve fairly. That was added in by CHDC in the final letter, but we don't believe that that adds to the government's obligation. Because it's not part of the contract or the agreement they reach? No, it is part of the contract, but it was not, as I said, it was not raised at the trial court. Why didn't you argue waiver? We are arguing waiver, Your Honor. It wasn't in your brief, was it, in your red brief? Did you argue waiver? No, Your Honor. Before this Court? No, we did not, Your Honor. And the reason is that when they mentioned it in their opening brief, they just said that there was this resolve fairly obligation, but they never defined it and they talked about bad faith and all those types of things. It wasn't until their reply brief that they said that the Court erred and that there was some additional obligation on the government to resolve things fairly, and that was more than just negotiating in good faith. And so we would argue that it was waived, one, because it wasn't included in the trial court, and two, because it wasn't included in their opening brief. And, in fact, if you look at their statement of issues at the beginning of their brief, they don't there point out that the trial court erred by not enforcing this resolve fairly language. It wasn't until their reply brief that they pointed that out. Let's assume it weren't waived. Do you agree or appreciate that there's a difference between the standard to be applied for negotiating in good faith and for resolving issues fairly? Whether or not that's met here is another question, but whether or not that's kind of a different standard to be applied. No, Your Honor, we don't. We don't believe that there's a different standard because of that, and the party's original understanding shows that. If we look at the record, I believe it's 644. It's minutes of a board meeting that CHDC held right before they sent that final letter, and they approved it. They considered a motion as to whether they should relinquish the program, and they approved that motion. In that, they say the motion is to relinquish the path, and then they go on and say, indicating that major issues will be negotiated. They never said that major issues would be resolved fairly. This was always their understanding, and they, on the previous page, on page 643, one of the board members looking at ACF's correspondence pointed out. I'm sorry, you were reading from 644 originally? 644, the indented quote there, Your Honor. Yeah, okay. Well, I mean, on 642 is the letter, and the letter says will also be negotiated and resolved fairly. It seems to me it's pretty hard to get around that requirement. We would agree that it's part of the contract book, but we do not believe that it adds any additional obligation to the government, and that was not the party's understanding at the time they entered into the agreement. We'd also point out that what they're doing here is quoting the letter from the government, and then they end the quote and add on this resolved fairly language, and the government's quote talks about these things being fairly negotiated, but it says that they're all being related to the transfer. It says it's related to the transfer. Those are the normal closeout costs that the government pays, and in this instance the government paid almost all of those. So even if this court was to hold that the resolved fairly language means you have to get to a fair result, which is what CHDC is arguing, the government paid almost all those costs related to the transfer of the grants. What the government didn't pay was these costs, overruns, and other costs, which are not covered by this quote. Well, except look at 642. I thought the issues related to transfer, title, licenses, liens, leases, lien was the large ticket item that wasn't paid, right? None of that was paid. That's true, Your Honor, but this language limits it to the transfer of that, and this language is fairly clear that it relates only to the transfer of these items, not to actual payment of the lien or anything like that. Assuming the standard applies, something more than negotiate in good faith, i.e. resolve fairly, do you think there's a sufficient basis in the court of claims analysis on which we could conclude that that standard was met? Yes, Your Honor. As you pointed out earlier, there's an extensive opinion here from the trial court that talks about all the problems that CHDC had and all the back and forth between the government and considering all their costs and trying to resolve this fairly. We'd also point out that the term resolve fairly is so vague, there's really no way that the court could get to apparently what they're arguing, which is that it would be a result that they believe is fair. There's simply no way that the court could look at that language and apply that to these different things and say, well, this is a fair result and that's not a fair result. Well, it seems to me that's what she arguably did. I mean, she looked at the complaints and the arguments they were raising with respect to all these issues as to why it was unfair and she concluded it was perfectly reasonable for the government to do what it did. That's correct. Mr. Bregler, what are your comments with respect to this question about the improvements, namely the modular building and the position that apparently was taken during the negotiations that the modular building belongs to the landlord and therefore there's no entitlement to any reimbursement for improvements. Yet, on the other hand, the government seems to have taken a position that, well, no, those improvements are subject to federal regulations and therefore the government has an interest. The evidence that CHDC cites on that is two different things. When they were considering these closing costs, what the government looked at was the lease that CHDC had entered into before they even received the grant and that lease makes it clear that improvements belong to the landlord. Now, the other evidence that they talk about is an email from Mr. Johnson and this was actually a year later after CHDC had already relinquished the program and the program had been transferred to an interim grantee called CDI and what Mr. Johnson was then addressing was the assignment of the lease to CDI, which the landlord was also a party to that agreement, and under that assignment, Mr. Johnson says that he's telling the landlord between you and CDI expressly recognize that the underlying lease is subject to a federal interest in the premises and so at that point they had already established with the landlord that there was a federal interest in that building. These were at two different times. Going back to when CHDC had it, it was under their lease it said that all improvements belong to the landlord and I'm sorry, the page I was reading from the record was A-775. Did the federal government not have an interest at the time then that this closeout was being negotiated? The government did have an interest in that building because it was used with federal funds. But that's not the position it took in the negotiations, right? No, the position they took was that CHDC had no interest in the building. If I could explain, Your Honor. Yeah, please. CHDC received a grant for approximately a million dollars to build the building. They couldn't build it. They did not build the building for that price and they ended up spending some of their own money. Now that money that they spent went into the modular, didn't increase the value of the modular just to correct various problems from mismanagement. So their argument under these property regulations and that they're still entitled to, basically at the end of that all the government got was a building that was worth approximately a million dollars, which is what the government paid for it. They're not entitled to anything under these property regulations because they spent their own money, because they had their own problems and their own mismanagement. Yeah, it seems to me that's a little different question though from the question of whether they were arguing that, well, they're arguing with CHDC, well, we don't need to get into anything with respect to these modular improvements because after all, all of that in accordance with the lease belongs to the landlord. So that's just off the table. But it seems to me that what you're saying is something quite different, that A, now the federal government has an interest in some respect and B, the improvements may very well be subject to some reimbursement, but in this case the improvements were just made because they had the correct mismanagement. Yes, Your Honor. I think what's important is that what CHDC is arguing is that the government acted in bad faith by not applying the regulations correctly. And what I'm trying to point out is simply that no matter how you apply the regulations, they're not entitled to any money under the regulations and so the government, maybe they got there in a different interpretation or a different reading, but in the end, they're not entitled to any money under those regulations, so the government couldn't have acted in bad faith because they're not entitled to any money. Anything further, Mr. Bigler? If there's no further questions, no, Your Honor. Thank you. Thank you. Mr. Adler, you have a little over three minutes remaining. Thank you very much. Just a couple of points. One, in response... Did you raise the resolve fairly issue before your reply brief? Yes, Your Honor. That was the first thing I was going to address. It's simply not true that it wasn't raised in the initial brief. It's in the statement of the issues. It's in almost... it permeates every single aspect of the brief. Here's the heading of our... ACF never intended to negotiate in the favor of... Do you have a page number? Yes, I do. That's on page 23. We'll start, Your Honor, with the statement of the issues, page 2. Whether the trial court erred in holding, did not breach its part in regarding the relinquishment of... or ACF never recognized any obligation to negotiate in good faith and resolve fairly issues. Again, the first... But this isn't... I don't see any point here where you say specifically that a fair resolution is different from a procedural good faith negotiation. Is that highlighted anywhere here? Yes, it is, Your Honor. Show me where... it isn't in the issues. Show me someplace else. Okay. On page 24, it declared unambiguous terms of the contract required ACF to not only negotiate in good faith costs, but also to resolve fairly the enumerated cost items. On page 27? Yeah, but you never... I mean, if you look through that section, you're only talking about the good faith. You never really get to... You're not calling out that there's some different standard for resolve fairly. It's under a heading of good faith and resolve fairly. It's, again, under this heading that groups those two concepts together. Throughout the brief, it talks about the trial court's failure to address the fairly resolved issue. Separate and apart from the good faith? Yes. Okay, that's what I think we're looking for. I think it's right where I had mentioned previously. It says right in there that the trial court only addressed the faith not resolved fairly. I'm sorry, so are you back to page 24? 21 here, Your Honor. 21. In the summary and also on page 24, it cites to the contract provision, and it says that the clear and unambiguous terms required not only to negotiate in good faith, but also to resolve fairly the enumerated cost items. Any final comments, Mr. Adler? Yes, Your Honor. Just quickly on the level, the costs that were at issue here aren't all related. They cannot possibly be included in this management claim that the government has claimed. A lot of it was reviewed that related to that. I see that my time's up, so thank you very much. Thank you, Mr. Adler.